UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREI LUCHKIN (A-246-735-650), | No. 1:26-cv-2583 DAD CSK |
| Petitioner, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| WARDEN, CALIFORNIA CITY DETENTION FACILITY, | |
| Respondent. | |

Petitioner Andrei Luchkin (A-246-735-650), a native and citizen of Russia who is proceeding without counsel, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Following a brief detention, petitioner was released into the United States on February 15, 2023 using the CBP One mobile device application.  On October 14, 2025, petitioner was arrested and detained by U.S. Immigration and Customs Enforcement ("ICE") when petitioner reported to a regular ICE check-in.  This habeas action concerns petitioner's October 14, 2025 re-detention.  For the reasons that follow, the Court recommends granting the petition for a writ of habeas corpus and ordering petitioner's immediate release.

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.   FACTUAL BACKGROUND[2]

Petitioner was born in Russia in 1991.  (ECF No. 1 at 1.)  On February 15, 2023, petitioner entered the United States using the CBP One mobile device application.[3]  (Id.)  Petitioner was briefly detained before being released into the United States.  (Id. at 8.)  Federal immigration authorities gave petitioner a work permit.  (Id. at 1.)  Petitioner lived in New York and worked at a warehouse in Brooklyn, New York.  (Id. at 2.)  On October 14, 2025, petitioner reported to a regular ICE check-in where he was arrested and detained.  (Id.)  Petitioner was not provided a pre-deprivation hearing.  (Id.)  Petitioner has been in continuous detention since October 14, 2025.  (Id.)

Respondents do not contest petitioner's factual allegations.  (See ECF No. 6.)

## II.   PROCEDURAL BACKGROUND

On April 6, 2026, petitioner filed his petition for writ of habeas corpus.  (ECF No. 1.)  On April 8, 2026, respondents timely filed an answer.  (ECF No. 6).  On April 27, 2026, this Court found that respondents served the answer on the wrong petitioner.  (ECF No. 10.)  This Court ordered respondents to serve petitioner with the answer and to file a status report addressing petitioner's claim in the petition that his glasses were taken making it impossible for him to read.  (Id.)  On April 28, 2026, respondents filed a corrected certificate of service.  (ECF No. 11.)  Respondents also informed the Court that it appeared that petitioner was mailed a timely copy of the answer, but the certificate of service was incorrect.  (Id.)  Respondents also informed the Court that petitioner's glasses could not be located.  (ECF No. 12.)

Based on respondents' representation that petitioner was served with the answer on April

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 9.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents do not contest petitioner's factual allegations.  (See ECF No. 6.)

[3]  CBP One "was a mobile application launched by the Department of Homeland Security in October 2020."  Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 57 n.2 (D.D.C. 2025).  "It enabled noncitizens to book an appointment to appear for inspection at a port of entry, submit information in advance, and potentially obtain parole or admission into the country."  Id.  On January 25, 2025, "DHS removed the scheduling functionality from the CBP One app."  Id.  Further, DHS has also "renamed the application CBP Home, which it now says facilitates voluntary self-deportation."  Id.

8, 2026, this Court finds that petitioner was served with the answer on that date. Petitioner did not file a reply to the answer. (See Docket.) Briefing is complete.

III.    **LEGAL STANDARD**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

IV.    **DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his continued re-detention based on the violation of the following: (1) the Fifth Amendment procedural due process clause; and (2) the Fifth Amendment substantive due process clause. (ECF No. 1 at 7-8.) Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing. (ECF No. 6 at 1-2.) Respondents cite Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, No. 25-cv-3741 (8th Cir. Mar. 25, 2026), in support of their position that § 1225(b)(2) is applicable here. (Id. at 1.) Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (Id. at 1.)

**A.     Due Process Claims (Claims One and Two)**

Petitioner argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment, and has a liberty interest in not being incarcerated without a pre-custodial hearing.  (ECF No. 1 at 7-8.)  Respondents argue petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress.  (ECF No. 6 at 2.)  Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas, 533 U.S. at 693.  "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary."  Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps:  the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).  The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint.  Young v. Harper, 520 U.S. 143, 147-49 (1997).  Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli,

4

411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).  To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

Here, petitioner's initial detention and subsequent release in February 2023 are similar because it allowed petitioner to live in the United States, subject to immigration supervision, but free of custody for over 2.5 years.  Such time allowed petitioner to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  Petitioner obtained a work permit and worked at a warehouse in Brooklyn, New York.  (ECF No. 1 at 1-2.)  This Court finds that petitioner's release into the United States gave rise to a constitutionally protected liberty interest.

Petitioner's admission was premised upon a finding that, at the time of petitioner's release, he was not dangerous nor a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for

any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4.  This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934 at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty

6

protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over 2.5 years, petitioner was free from custody before his re-detention. During that time, petitioner obtained a work permit and worked at a warehouse in Brooklyn, New York. (ECF No. 1 at 1-2.) The duration of his freedom from custody elevates and underscores his interest in liberty. See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. (See generally ECF No.6.) In addition, respondents do not contend that petitioner has a criminal record. (Id.)

Here, petitioner has been detained since October 14, 2025, without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community. Respondents must demonstrate that petitioner's re-detention is reasonably related to a valid government purpose. See Zadvydas, 533 U.S. at 690; see, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford,

7

2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community, he lived in the country for over 2.5 years and has no criminal record. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was re-detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036. Accordingly, the Court finds that petitioner is entitled to relief on his due process claims.

## V.     MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 3.) There currently exists

8

no absolute right to appointment of counsel in habeas proceedings.  See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996).  Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require."  See Rule 8(c), Fed. R. Governing § 2254 Cases.  Because the Court recommends that the petition be granted, petitioner's motion for appointment of counsel is denied.

## VI.     CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for appointment of counsel (ECF No. 3) is denied.

Further, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.  Respondents be ordered to IMMEDIATELY release petitioner Andrei Luchkin (A-246-735-650) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

3.  Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

4.  Given petitioner's pro se status, respondents be directed to file, within **seven days** of the adoption of these findings and recommendations, a status report addressing petitioner's status.

5.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 30, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Luch2583.imm.rel/2

10